IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 12-cv-02637-RBJ

TOM POWERS, an individual, and
MARY POWERS, an individual,

      Plaintiffs,

v.

BLUECROSS BLUE SHIELD OF ILLINOIS, HEALTH CARE SERVICE CORPORATION,
WOODWARD, INC., and
MEDICAL REVIEW INSTITUTE OF AMERICA, INC.,

      Defendants.

---

## ORDER

---

    Tom Powers and his wife Mary Powers bring this suit against Health Care Service Corporation (HCSC), Medical Review Institute of America, Inc. (MRI), and Woodward, Inc. MRI and Woodward have filed motions to dismiss the claims against them [document #22, 24], and HCSC has filed a partial motion to dismiss some of the claims against it [#23].  Because the motions to dismiss present several common questions of law, they will be addressed together below.

    **Facts**

    Tom Powers is an employee of Woodward, Inc. and a participant in Woodward's self-funded employee benefits plan ("the Plan").  His wife Mary Powers is a beneficiary of the Plan. In addition to sponsoring the Plan, Woodford act as the Plan Administrator.  Health Care

Services Corporation ("HCSC"), which does business as BlueCross Blue Shield of Illinois ("BCBSI"), is the Claims Administrator for the Plan.[1]

In 2001 Ms. Powers underwent surgery for cervical fusion and application of an anterior cervical plate due to injuries suffered in a motor vehicle accident.  Ms. Powers was mostly pain free for ten years.  However, in March 2011 she began experiencing severe neck and shoulder pain, migraines, and decreased mobility.  Her surgeon, Kenneth Pettine, M.D., diagnosed pseudarthrosis, and she underwent a nonsurgical procedure to treat her symptoms.  The Plan paid for that treatment.

When that treatment did not resolve Ms. Powers' symptoms, her doctor recommended that she have a two-level cervical disc replacement using a "Prestige Cervical Disc" replacement. In May 2011 BCBSI denied authorization for the surgery, citing lack of medical necessity.  Dr. Pettine then provided documentation of the medical need for the surgery and provided information indicating that the Food and Drug Administration does not consider the device to be investigational.  On July 21, 2011 BCBSI notified Dr. Pettine that his "appeal" of the initial denial was being reviewed.

However, plaintiffs allege, Ms. Powers' cervical pain was intolerable, and her quality of life was deteriorating.  Therefore, she elected to have the surgery recommended by Dr. Pettine even though a decision had not yet been rendered on the appeal.  The surgery was performed on August 2, 2011, and Ms. Powers has realized a dramatic improvement in the quality of her life. The Plan paid for some of, but not all, costs related to the surgery.

On September 2, 2011 BCBSI denied coverage for the remainder of the costs of Ms. Powers' surgery.  In its letter of that date from Dr. Elif Oker, attached as Exhibit 1 to the Second Amended Complaint [#18-1], BCBSI stated that its medical director had reviewed the claim but

---

[1] Hereafter for simplicity I will refer to the Claims Administrator as BCBSI, the dba for defendant HCSC.

denied it because "[t]here is insufficient evidence establishing that the service is generally accepted in the medical community and/or proven to be effective according to peer reviewed clinical literature." *Id.*

Ms. Powers appealed the denial, and her appeal was referred to the Medical Review Institute of America, Inc. ("MRIA") for review.  The MRIA review, dated April 12, 2012, is attached to the Second Amended Complaint as Exhibit 2 [#18-2].  According to the review, MRIA referred the case to a board-certified orthopedic surgeon who had been in practice since 1994 but whose identity was not disclosed in accord with MRIA procedures.  The reviewer concluded that the procedure was not medically necessary or supported by peer-reviewed medical literature.  *Id.* at 4.  The reviewer explained his or her findings as follows:

> Cervical disk replacement at C6-7 for treatment of a pseudarthrosis following prior anterior cervical discectomy and fusion and total disk arthroplasty at a second level during the same operative setting (C&-T1) was not medically necessary.  Total disk replacement for a failed fusion and two level cervical disc arthroplasty are both investigational applications of this procedure and do not meet BCBSI medical policy criteria for the use of this device.
>
> The BCBSI medical policy considers the artificial intervertebral cervical disc to be medically necessary for a single level reconstruction in a patient with intractable radiculopathy who has failed conservative management.  The use of the artificial cervical disc for treatment of a prior failed fusion is not supported by this criterion.  The criterion also does not support the use of the device for treatment at two levels as was performed in this case.  The general indications for currently approved cervical-ADR devices (based on protocols of randomized-controlled trials) are for patients with intractable symptomatic single-level cervical DDD who have failed at least six weeks of non-operative treatment and present with arm pain and functional/neurological deficit.  There is no current peer reviewed literature that demonstrates the superior effectiveness of a cervical total disk arthroplasty for the treatment of a prior failed cervical fusion (pseudarthrosis) or that this technique can be effectively combined with an adjacent total disk arthroplasty for the treatment of cervical spondylosis.  In addition, and most importantly, cervical disc replacement is still considered an investigational procedure at this time.
>
> According to the Official Disability Guidelines: "While comparative studies of total disc arthroplasty with anterior cervical fusion yield similar results, the expectation of a decrease in adjacent segment disease development in long-term

3

studies remains in question.  There is an additional problem with the long-term implications of development of heteroptopic ossification.  Additional studies are required to allow for a 'recommended' status.  These should include an evaluation of the subset of patient who will most benefit from this procedure as well as study of advantages/disadvantages of disc design and surgical procedure in terms of outcomes (particularly for development of heterotopic ossification and adjacent segment disease)."  As an investigational procedure, and in the absence of radiculopathy, total disc arthroplasty of the cervical spine cannot be considered medically necessary for this patient.

*Id.* at 3-4.

Plaintiffs allege that "Woodward, under the direction of HCSC and [MRIA], denied the recommended treatment."  Second Amended Complaint [#18] ¶33.  Plaintiffs sued to recover the costs incurred by the surgery that the Plan has not paid.

**Standard of Review**

In reviewing a motion to dismiss, the Court views the motion in the light most favorable to the nonmoving party and accepts all well-pleaded facts as true.  *Teigen v. Reffrow,* 511 F.3d 1072, 1079 (10th Cir. 2007).  However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007).  A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Pleadings that offer only "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court may also consider the two documents attached to the Second Amended Complaint and the terms of the Plan which was referenced in the Second Amended Complaint and is central to plaintiff's claim.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997).

**Analysis**

**I.      Fiduciary Duties.**

All defendants seek dismissal of plaintiffs' third claim.  In that claim plaintiffs assert that defendants breached fiduciary duties established in 29 U.S.C. § 1104(a).  That section provides that fiduciaries must discharge their duties with respect to a plan in the interest of the participants and beneficiaries.  However, claims for breach of those duties are brought under 29 U.S.C. § 1132.

As potentially relevant here, section 1132 provides:

(a) **Persons empowered to bring a civil action.**  A civil action may be brought—

> (1) by a participant or beneficiary--
> . . .
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> . . .
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

Section 1132(a)(1)(B) "provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims . . . that runs directly to the injured beneficiary."  *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).  Therefore, consideration of a benefits claim under 29 U.S.C. § 1132(a)(3) is improper when the plaintiff states a cognizable claim under 29 U.S.C. § 1132(a)(1)(B).  *See Lefler v. United Healthcare of Utah, Inc.,* 72 F. App'x 818, 826 (10th Cir. 2003).

In their third cause of action, although brought under the theory of breach of fiduciary duty, what the plaintiffs are alleging is that benefits owed to Ms. Powers were wrongfully denied.  Because Congress provided adequate relief for this injury under § 1132(a)(1)(B), which

in turn is adequately pled in the first and second claims, plaintiffs' third cause of action is dismissed.

## II.    Mr. Powers' Claims.

All defendants argue that Mr. Powers lacks standing to bring his claims under 29 U.S.C. § 1132(a)(1)(B).  The parties agree that Mr. Powers is a beneficiary under the plan.  However, the defendants argue that the language of the statute limits standing to the individual due benefits, and in this case benefits are due, if at all, to Mary, not Tom, Powers.

Plaintiffs cite *Wills v. Regence Bluecross Blueshield of Utah,* No. 2:07-CV616BSJ, 2008 WL 4693581 (D. Utah Oct. 23, 2008).  There the father of a mentally ill daughter sought to bring suit under § 1132(a)(1)(B) alleging that she had wrongly been denied benefits, and that he had paid her mental health costs and sought reimbursement.  The district court held that "Myron Wills has pleaded a plausible claim of injury-in-fact concerning reimbursement 'due to him' as subrogee of Jordann Wills' claim as a result of his own payment of those expenses on her behalf."  *Id.* at *9.  Plaintiffs argue that Mr. Powers paid many of the medical bills, and therefore, that he is entitled as a subrogee to bring suit seeking reimbursement.

"Subrogation is defined as 'the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt.'" *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 833 (Colo. 2004) (quoting *Behlen Mfg. Co. v. First Nat'l Bank of Englewood*, 472 P.2d 703, 707 (1970)).  The problem with Mr. Powers' theory is that Mrs. Powers is also a plaintiff in the suit seeking to collect benefits under the plan.  Mr. Powers has not been substituted for Mrs. Powers in this case and thus is not the subrogee.

6

Mr. Powers has not alleged that benefits are *due to him* under the terms of *his plan* or that he is seeking to *enforce his rights* or *clarify his rights to future benefits.*  Under the language of the statute, Mr. Powers does not have standing under § 1132(a)(1)(B).

### III.    Who is a proper defendant under 29 U.S.C. § 1132(a)(1)(B)?

MRIA and Woodward, but not BCBSI, argue that they are not proper defendants under § 1132(a)(1)(B).  To put these arguments in perspective, it is helpful first to review certain provisions of the Plan.

<u>Claim Approval and Appeal Process</u>

The Plan provides that claims for benefits must be filed with the Claims Administrator. OneWoodward Health Plan, Article IX ¶ A at 87 [#24-1 at 4].  The Claims Administrator makes the initial decision as to whether to approve or deny the claim.  *Id.* at 90-92.  If a claim is denied, the claimant must pursue two levels of appeal before she can proceed with an action in court.  *Id.* at 92-93.

The Claims Administrator makes the initial decision on appeal as to whether clinical claims, meaning claims for hospitalization or other health care services or supplies, are eligible for payment under the terms of the Plan.  *Id.*  If the claim is denied by the Claims Administrator on this first appeal, the claimant may (and as a precondition to a lawsuit must) request review of that decision.  The Claims Administrator sends the request to the Plan Administrator who appoints an "Appeals Fiduciary" to review the denial of the claim.  The Appeals Fiduciary is a person or committee not involved in the initial adverse benefit determination or the first appeal or a subordinate of the persons who participated in the prior adverse determination.  *Id.* at 95. The Appeals Fiduciary makes "its decision" within 30 days after the Claims Administrator

receives the request for review.  If the claim is denied on the second appeal, the Plan

Administrator provides the claimant notice of the determination, which is final.  *Id.* at 95-96.

Plaintiffs allege that MRIA served as the Appeals Fiduciary.  Second Amended

Complaint [#18] at 51.  The Court assumes the truth of that allegation for present purposes, and

in any event, it does not appear to be disputed. [2]  The Plan refers to the Appeals Fiduciary's

making "its decision."  Whatever that language may mean, however, the Court holds that it does

not mean that the Appeals Fiduciary makes the final decision to deny the claim.  Rather, the Plan

provides that "[a] claimant who disagrees with the *decision of the Plan Administrator* after an

appeal may have the right to bring a civil action under section 502(a) of ERISA."  *Id.* at 96

(emphasis added).  This interpretation is consistent with the role actually performed by MRIA as

discussed next.

Medical Review Institute of America, Inc.

Plaintiffs allege that Woodward "may have delegated claim determination to another

company known as Defendant Medical Review Institute of America, Inc., who appears to have

made the final recommendation to deny Plaintiff Mary Powers' claim."  Second Amended

Complaint ¶ 10.  Plaintiffs further allege that MRIA "personally participated in the decision . . .

deny reimbursement for the cost of medical care to plaintiff Mary Powers," and that "Woodward,

under the direction of HCSC and [MRIA], denied the recommended treatment."  *Id.* at ¶¶ 13, 33.

MRI responds that it is not a proper defendant because it is not a plan sponsor, plan

administrator, claims administrator, or fiduciary and did not have final decision making authority

to deny Ms. Powers' claim for benefits.

---

[2] In a letter attached to plaintiffs' response to Woodward's motion to dismiss [#34-2], Woodward advised Mr. Powers that MRIA was the Appeals Fiduciary.  This letter seems to indicate that the final decision to deny the claim on the second appeal was made by the Woodward Appeals Committee after receiving MRIA's report.  Unlike the exhibits to the Second Amended Complaint and the Plan itself, however, the letter is a matter outside the scope of what this Court will consider in ruling on a Rule 12(b)(6) motion.

As indicated above, exhibit 2 to the Second Amended Complaint, MRIA's report, contains the written opinion of an independent, albeit anonymous, orthopedic surgeon concerning Ms. Powers' appeal from BCBSI's denial of her claim.  [#18-2].  This report did not purport to be a decision on Ms. Power's claim under the Plan.  On the contrary, it provided that "[t]he health plan, organization or other party requesting or authorizing this review is responsible for policy interpretation, the final determination made regarding coverage and/or eligibility for this case, and providing written notice of its determination to the patient/enrollee or their authorized representative and/or their treating provider, which shall include any information required by state and/or federal regulations." *Id.* at 6.

In short, the document itself indicates that MRIA is a company that locates physician specialists to provide medical opinions.  In this instance it was an opinion as to whether a procedure was medically necessary under the standard of medical practice in the field of orthopedic surgery.  The medical opinion could have been obtained directly from an independent orthopedic surgeon.  The fact that it was obtained through an organization that in turn obtains the opinion from the physician is not material.  Either way, if the organization (or an independent physician) had ERISA exposure if the physician's opinion did not support the claim, one wonders how a plan administrator would ever find an independent medical reviewer willing to undertake the task.[3]

The allegation that Woodward "may have delegated claim determination to [MRIA]" is speculative and is contradicted by the review itself as well as the provision of the Plan indicating that the decision on the second appeal is made by the Plan Administrator.  Plaintiffs' allegations that MRIA "personally participated in the decision" to deny the claim and that Woodward acted

---

[3] The Court has also done its own research of ERISA cases in which the MRIA was mentioned.  In each case MRIA was described as a source of an independent medical opinion.  The Court found no case where MRIA was named as a defendant, much less assigned liability under ERISA because of the opinion it provided.

"under the direction of" MRIA are conclusory and are likewise contradicted by plaintiffs'

exhibit.  In short, even under the liberal pleading standard of Rule 12(b)(6), there is no basis on

which this case can go forward against MRIA.

Woodward

Woodward argues that claims can only be brought against the Plan.  Under the terms of

the Plan, "contributions are paid into a trust maintained under the Plan through which Plan

benefits are paid."  Article II at 6 [#24-1 at 3].  Benefits are then paid by the Plan.  *Id.,* Article IX

¶E [#24-1 at 13].  ERISA provides that "an employee benefit plan may sue or be sued under this

title as an entity."  29 U.S.C. § 1132(d).

There is case law that arguably support's Woodward's position.  In *Kunz v. Colorado*

*Ass'n of Soil Conservation Districts Medical Benefits Plan,* 840 F. Supp. 811 (D. Colo. 1994) the

beneficiary sought a judgment under 29 U.S.C. § 1132(a)(1)(B) against both the plan and the

third-part administrator.  Interpreting the statute as containing no provision which would entitle

the plaintiff to recover from any entity other than the plan, the court held that the plaintiff could

not sustain a claim against the third-party administrator as a matter of law.  *Id.* at 812-13.  *See*

*also Denver Health and Hosp. Authority v. Beverage,* 843 F. Supp. 2d 1171, 1183 (D. Colo.

2012).  I agree that there is no provision in that statute expressly permitting a suit against an

entity other than the plan.  It must also be said, however, that the statute does not specify who

can or must be sued.

In *Kunz* Judge Babcock cited *Walter v. International Ass'n of Machinists Pension Fund,*

949 F.2d 310, 315 (10th Cir. 1991), which in turn cited *Groves v. Modified Retirement Plan for*

*Hourly Paid Employees of the Johns Manville Corporation and Subsidiaries,* 803 F.2d 109, 116

(3d Cir. 1986).  The *Walter* court did not hold that a beneficiary may only sue the plan to recover

benefits.  Actually, in one place the opinion states that § 1132 "do[es] not address plan duties –

instead, [it] only refer to the plan administrator's duties."  949 F.2d at 315.  I do not find that

sentence dispositive in plaintiffs' favor, however, as the issue posed here was not addressed.

*Walter* and *Groves* recognize that the plan and the plan administrator are distinct, and that

provisions of ERISA that distinguish a plan's duties from a plan administrator's duties must be

respected.  However, if *Walter* were intended to establish a hard and fast rule that a suit for

benefits may only be brought against the plan, then how does one explain ERISA cases

addressed by the Tenth Circuit where the administrator, not the plan, was the defendant, but there

is no suggestion that this was wrong.  *See, e.g., Allison v. UNUM Life Ins. Co. of America,* 381

F.3d 1015 (10th Cir. 2004); *Sandoval v. Aetna Life and Cas. Ins. Co.,* 967 F.2d 377 (10th Cir.

1992).  *See also Graham v. Hartford Life and Accident Ins. Co.,* 501 F.3d 1153 (10th Cir. 2007).

Perhaps the best explanation is that the issue raised here appears not to have been raised in those

cases.

The cases cited by Woodward from other jurisdictions are not compelling.  For

example, in *Harris v. Swan, Inc.,* 459 F. Supp. 2d 857 (E.D. Mo. 2005), the court held

that a plan administrator which did not have discretionary authority under an ERISA plan

could not be sued under 29 U.S.C. § 1132(a)(1)(B).  However, this holding was based on

the fact that the plan administrator had delegated its discretionary authority to a claims

administrator.  *Id.*  Under the terms of the Plan in the present case, as interpreted by this

Court above, both the Claims Administrator and the Plan Administrator retain authority

with respect to appeals of the Claims Administrator's initial denial of a claim.

Woodward also cites *Anderson v. Illinois Bell Telephone Co.,* 961 F. Supp. 1208

(N.D. Ill. 1997), which rejected a beneficiary's effort to sue her employer for benefits

under the employer's ERISA plan.  The court held that "[i]t is well established that the proper defendant to a § 1132(a)(1)(B) suit is the plan." *Id.* at 1212.  The court cited *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1490 (7th Cir. 1996) for that proposition.  In *Jass,* however, the Prudential Health Care Plan, Inc. ("PruCare") was described as the administrator of the employee benefit plan.  The benefits related to a knee replacement surgery.  The beneficiary sued PruCare; a nurse serving as an agent of PruCare who determined that the surgery was not necessary; and the doctor who performed the surgery.  In affirming the dismissal of the claim against the nurse, the court stated that "'ERISA permits suits to recover benefits only against the Plan as an entity.'" *Id.* (citing *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1324 (9th Cir. 1985)).  Therefore, "[t]he appropriate defendant for a denial of benefits claim would be the Plan, which in this case is PruCare." *Id.*  I cannot draw too much from this holding, however, because apparently in that case the plan and its administrator were one and the same.

In *Neuma, Inc. v. AMP, Inc.,* 259 F.3d 864 (7th Cir. 2001) the court commented, "[w]e continually have noted that 'ERISA permits suits to recover benefits only against the Plan as an entity.'" (citing *Jass*).  However, the footnote continues, "[w]e have, however, allowed a suit for benefits to go forward with an employer named as the defendant when the employer was the plan administrator and the employer and the plan were otherwise closely intertwined." *Id.*

In *Miller v. Pension Plan for Employees of Coastal Corporation,* 780 F. Supp. 768 (D. Kan. 1991), *aff'd on other grounds,* 978 F.2d 622 (10th Cir. 1992), *cert. denied,* 507 U.S. 987 (1993), the employee seeking benefits sued the plan and his employer.  Plan administration was delegated to the employer's "Administrative Committee."  The employer moved to dismiss on the ground that it was not a proper party, because ERISA only permits suits against the plan as

an entity.  The court noted that the plaintiff did not respond to or contest the motion, and "therefore," dismissed the claim against the employer.  *Id.* at 773.  In the circumstances, that is marginal authority for Woodward's position.

On the other hand, there is authority suggesting that a plan administrator is a proper, even a necessary, party.  As discussed earlier, 29 U.S.C. § 1132(a)(1)(B) "provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims . . . that runs directly to the injured beneficiary."  *Varity,* 516 U.S. at 512.  Plan administrators and claims administrators are fiduciaries and must discharge their duties in accordance with the terms of the plan.  *Hunt v. Hawthorne Associates, Inc.,* 119 F.3d 888, 891-92 (D.C. Cir. 1997).  In *Hunt,* the court interpreted a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) as a claim for equitable relief.  119 F. 3d at 907-08.  *But cf. Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U..S. 204, 210 (2002) (a claim for reimbursement of benefits paid because of a recovery against a third party is a legal claim, not an equitable claim, and cannot be brought under 29 U.S.C. § 1132(a)(3)).  Accordingly, it held, an injunctive order precluding payment of benefits or requiring payment of benefits can only issue against a party capable of providing the relief requested.  "We therefore reject the notion that an injunctive order to pay benefits under section 502(a)(1)(B) of ERISA can issue solely against an ERISA plan as an entity."  *Id.*[4]  Under the terms of that plan, an order to pay benefits from the plan's fund had to be directed to the plan administrator, which had the ultimate authority to determine whether the beneficiary should receive payment of his benefit.  *See id.* at 909-11.  Under that reasoning, Woodward is a necessary party, while the Plan and possibly even BCBSI are not.

---

[4] This holding was not based upon Section 29 U.S.C. 1132(d).  Subsection (d)(1) contains the provision, cited by Woodward, that  plans can sue and be sued.  Subsection (d)(2) provides that a money judgment against a plan is enforceable only against the plan "and shall not be enforceable against any other person *unless liability against such person is established in his individual capacity under this title.*" (emphasis added).  The *Hunt* court interpreted § d(2) as contemplating legal relief and, therefore, as not applying to an action to recover benefits under 29 U.S.C. § 1132(a)(1)(B).  119 F.3d at 908, n. 54.

One district court that analyzed the issue at some length likewise rejected the notion that a claim for benefits may only be asserted against the Plan. *Slayhi v. High-Tech Institute, Inc.,* No. 06CV2210, 2007 W.L. 4284859 (D. Minn. 2007). The court noted that it could "scarcely blame [the plaintiff] for her apparent confusion about what type of ERISA claim she should bring," as the ERISA enforcement scheme as interpreted by the courts "is bewilderingly complex." *Id.* at *5. The plaintiff had named only her employer as a defendant. In a thoughtful opinion, the court agreed that the employer, as employer, was not a defendant on the benefits claim under 29 U.S.C. § 1132(a)(1)(B). Rather, the proper party was its insurer, which, as the claims administrator and "de facto plan administrator," had made the decision to terminate her benefits. The court also noted its disagreement with the proposition that suits to recover benefits can proceed only against the plan as an entity, specifically rejecting the analysis of the oft-cited Ninth Circuit decision in *Gelardi, supra*. The court concluded that the proper defendant is the party with authority under the plan documents to pay benefit claims from plan assets. *Id.* at *10.

Interestingly, a "Commentary" on benefits claims litigation published in Volume 29 of the United States Code Service following § 1132 states:

> The complaint seeking to recover benefits should name the plan administrator as a defendant, as that party has overall control of the operation of the plan. The complaint should also name as a defendant any other party, such as an insurance company, that exercises actual control over the decision whether or not to pay benefits under the plan. The plan itself may be made a defendant, as it can be sued as an entity by virtue of ERISA § 502(d)(1) (29 USCS § 1132(d)(1), but its absence should not limit the equitable relief granted if the plan's fiduciaries are defendants.

K. Pilger, Commentary, "Benefits Claims Litigation under ERISA § 502(a)(1)(B)," 29 U.S.C.S. 10, 22. (2011).

In the absence of controlling Tenth Circuit authority to the contrary, I find the reasoning of *Hunt, Slayhi* and the quoted Commentary to be persuasive.  I am somewhat mystified that, even after filing three iterations of their complaint, the plaintiffs have elected not to name the Plan as a defendant.  That might prove to be risky business.  However, I find no logical reason why the Plan Administrator, to which this particular plan assigned final responsibility for the denial of Ms. Powers' claim, is not an appropriate defendant.[5]

## IV.   Production of Documents.

In their fourth cause of action, the plaintiffs allege that Woodward has failed to turn over certain documents in violation of 29 U.S.C. 1132(c)(1).  Second Amended Complaint [#18] ¶55.  Specifically, plaintiffs allege that they have requested by not received the following documents: (1) email from Kara Einfalt 3/16/12; (2) letter from Kenneth A. Pettine, M.D. 4/4/2012; (3) Treating Cervical Pseudarthrosis with Cervical Artificial Disc Replacement by Dr. Pettine, M.D.; (4) Letter from Mary Powers 11/26/01; (5) predetermination request fax form; (6) surgical orders form; and (7) Medtronic Clinical Outcomes of the Prestige Cervical Disc.  Complaint ¶ 55.[6]  They ask for "damages" of $110 per day pursuant to that statute and 29 C.R.R. § 2575.502(c).

In its motion Woodward argues that this claim should be dismissed because § 1132(c)(1) only requires that certain documents be provided to plaintiffs on request: documents required by 29 U.S.C. §§ 1166(1) or (4), 1021(e)(1), 1021(f), or 1025(a); or any information which an administrator is required by this subchapter to furnish to a participant or beneficiary.  In response, plaintiffs do not mention § 1132(c)(1).  Instead, they argue that Woodward is required

---

[5] Woodward denies that it made the decision to deny Ms. Powers' claim, but it does not clearly express whom it believes did make the decision.  By its citation to the *Harris* case one could perhaps infer that Woodward assigns this responsibility to the Claims Administrator.  Motion [#24] at 4-5.  However, it then suggests that the Appeals Fiduciary, MRIA, made that decision.  *Id.* at 6.  As indicted above, this Court disagrees with either suggestion and holds that under the terms of the Plan, the Plan Administrator makes the final decision following the second appeal.

[6] The seven documents were all listed in the MRIA report as documents received and presumably reviewed by the orthopedic surgeon retained by MRIA.

to provide the documents pursuant to § 1132(c)(2) and § 1133, neither of which was the subject

of the Fourth Cause of Action as pled in the Second Amended Complaint.

Beyond the pleading problem, the Court fails to see how § 1132(c)(2), which provides

that the Secretary may asses a civil fine for a plan administrator's failure to file an annual report,

is potentially relevant to plaintiffs' Fourth Cause of Action.  Section 1133 requires an employee

benefit <u>plan</u> to provide written notice as to why a claim has been denied and to afford a

"reasonable opportunity to any participant whose claim for benefits has been denied for a full

and fair review by the appropriately named fiduciary of the decision denying the claim."  29

U.S.C. § 1133(1) and (2).  The plaintiffs have not alleged that they were not provided adequate

notice as to why Ms. Powers' claim was denied or that she did not have a reasonable opportunity

for a full and fair review of the denial by the appropriately named fiduciary.  In any event,

because the Plan was not joined as a defendant, the § 1133 issue is a moot point.  I agree with

Woodward that under that section, at least, the distinction between the plan and the plan

administrator is significant.  *See Groves,* 803 F.2d at 116.  *But see Adams v. Cyprus Amax*

*Mineral Co.,* 927 F. Supp. 1407, 1410-11 (D. Colo. 1996) (dismissal of a claim against a plan

administrator under 29 U.S.C. § 1133 is not required).

Because plaintiffs fail to point to any provision of ERISA requiring that the documents

that they request must be provided to them by Woodward, the fourth claim for relief is

dismissed.

## V.      Damages

Finally, in addition to seeking to recover the benefits that Ms. Powers was denied, the

plaintiffs also seek consequential and compensatory damages.  Consequential and compensatory

damages are not available under ERISA.  *Moffett v. Halliburton Energy Servs*., Inc., 291 F.3d

1227, 1234-1235 (10th Cir. 2002); *Kidneigh v. UNUM Life Ins. Co of Am.*, 345 F.3d 1182, 1185

(10th Cir. 2003). "Damages are limited to the recovery of benefits due under the terms of the

plan." *Kidneigh,* 345 F.3d at 1185. Accordingly, plaintiffs' request for consequential and

compensatory damages is dismissed.

**Order**

1. MRI's motion to dismiss [#22] is GRANTED.

2. HCSC's motion to partially dismiss [#23] is GRANTED.

3. Woodward's motion to dismiss [#24] is GRANTED IN PART and DENIED IN PART.

DATED this 28th day of May, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge